United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

POLARITY, INC.,

        Plaintiff,

   v.

DIVERSIFIED TECHNOLOGIES, INC.,

        Defendant.
_____/

No. C-06-0646 EMC

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

**(Docket No. 35)**

Defendant Diversified Technologies, Inc. has moved to dismiss the entire action on the basis that a covenant not to sue that it extended to Plaintiff Polarity, Inc. divests this Court of subject matter jurisdiction. Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **GRANTS** the motion. The Court further holds that it will retain jurisdiction to address the matter of attorney's fees pursuant to 35 U.S.C. § 285.

## I. DISCUSSION

A.   <u>Diversified's Motion to Dismiss</u>

On or about August 25, 2006, Diversified extended the following covenant not to sue to Polarity:

> Diversified Technologies, Inc. hereby covenants not to assert any claim of patent infringement against Polarity, Inc. under United States Patent No. 5,444, 610 ("the '610 patent") based upon any Polarity high power modulator or stackable switch product which existed prior to or on the date of this covenant. These products have been identified by Polarity as A10000 Grid Modulator, A10007 Output Switch Bd and Card, A10025.x IGBT/FET Driver Bd, A10026 IGBT/FET Driver Bd, 10030 Tetrode Driver Assembly, A10044 TVS/Res Snubber Bd, A10050 10Khz-10 Mhz Amplifier, A10070

1  50KV CCTWT Transmitter PS, A10071 Mod Anode Assembly,
2  A10081 IGBT Driver, A10095 40 KV. 60A pk 5KW Magnatron Test Set, A10144 15KV Anode Switch, BalanceResCapBD, Reg Amp
3  Wiring, RF AMP Logic and Crowbar, XFMR pulsed IGBT Driver, 3KV Modulator GM303-100, 4KV Switch Card, 4 x 4 Switch Module,
   and 5KV SSM Assembly.

   This covenant is limited to the '610 patent and does not apply
   to any other patent, whether related or unrelated to the 610 patent.

Polarity challenged the adequacy of the covenant not to sue because it is limited to a particular category of products, even though Diversified's counterclaim for patent infringement is not so limited.

At the hearing, Diversified agreed on the record to modify its covenant not to sue so that it would cover all Polarity products (*i.e.*, not just high power modulators or stackable switch products and not just those products identified by name above) which existed prior to or on the date of the covenant. Polarity agreed that this covenant as recited on the record divests the Court of subject matter jurisdiction under *Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1056 (Fed. Cir. 1995) (covenant not to sue stating that "Super Sack will unconditionally agree not to sue Chase for infringement as to any claim of the patents-in-suit based upon the products currently manufactured and sold by Chase") (emphasis omitted). Accordingly, the Court grants Diversified's motion to dismiss. Polarity's claims are dismissed without prejudice and Diversified's claims with prejudice.

As to the conditions on the dismissal, Diversified, in response to Polarity's objection to dismissal, agreed to the following: First, Diversified reaffirmed that it was bound by the "confidential" or "attorney's eyes only" designations and responsibilities imposed by the protective order in the case. Diversified also agreed to shred Polarity's documents obtained thereunder. Second, Diversified agreed that any future suit under the '610 patent against Polarity would be brought in this Court.

B.  Polarity's Motion for Attorney's Fees

Polarity contends that, although the covenant not to sue divests the Court of subject matter jurisdiction, the Court still retains jurisdiction to rule on Polarity's claim for attorney's fees pursuant

2

1  to 35 U.S.C. § 285.[1]  In support of its position, Polarity cites *Samsung Elecs. Co., Ltd. v. Rambus,*
2  *Inc.*, 398 F. Supp. 2d 470 (E.D. Va. 2005).  There, the court concluded that it had jurisdiction over
3  the fee claim because there was a "critical distinction between cases where the court never had
4  subject matter jurisdiction over the underlying claims, and cases in which the court has been
5  divested of its subject matter jurisdiction over the underlying claims by mootness."  *Id.* at 481.

6        Most courts that have considered the issue agree with *Samsung* that a court retains
7  jurisdiction over a claim for attorney's fees under § 285 even after dismissal pursuant to *Super Sack*.
8  *See, e.g.*, *Highway Equip. Co. v. FECO, Ltd.*, No. C03-0076, 2005 U.S. Dist. LEXIS 17313, at *9-13
9  (N.D. Iowa Apr. 22, 2005) (concluding that there was jurisdiction over defendant's claim for
10 attorney's fees under 35 U.S.C. § 285 even after plaintiff filed stipulation and motion for dismissal
11 without prejudice and covenant not to sue); *Knauf Fiber Glass, GmbH v. Certainteed Corp.*, No.
12 1:02-cv-1215-DFH, 2004 U.S. Dist. LEXIS 6291, at *5 (N.D. Ind. Mar. 24, 2004) ("retain[ing]
13 jurisdiction over CertainTeed's counterclaim for coercive relief, in the form of an award of attorney
14 fees and costs, on the basis that this case should be deemed 'exceptional' under § 285"); *see also*
15 *Realtek Semiconductor Corp. v. Marvell Semiconductor, Inc.*, No. C-04-4265 MMC, 2005 U.S. Dist.
16 LEXIS 39332, at *8 (N.D. Cal. Nov. 21, 2005) (dismissing action as moot in light of covenant not to
17 sue but still addressing fee claim pursuant to 35 U.S.C. § 285); *SVG Lithography Sys., Inc. v.*
18 *Ultratech Stepper, Inc.*, 334 F. Supp. 2d 21, 26 (D. Mass. 2004) ("The Federal Circuit 'and other
19 [court]s have established that there cannot be an award of attorneys' fees unless the court has
20 jurisdiction of the action."  It is possible that the Federal Circuit would recognize an exception to the
21 general rule that subject matter jurisdiction is a prerequisite for attorneys' fees in a case where the
22 party against whom fees are sought destroyed subject matter jurisdiction that once existed.").

---

[1] Section 285, which is part of the Patent Act, provides: "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. "Exceptional cases usually feature some material, inappropriate conduct related to the matter in litigation, such as willful infringement, fraud or inequitable conduct in procuring the patent, misconduct during litigation, vexatious or unjustified litigation, conduct that violates Federal Rule of Civil Procedure 11, or like infractions." *Serio-US Indus. v. Plastic Recovery Techs. Corp.*, 459 F.3d 1311, 1321-22 (Fed. Cir. 2006).

1    While there are some courts that have held otherwise,[2] this Court -- like those above --
2 concludes that it does retain subject matter jurisdiction over the request for attorney's fees.  The only
3 question remaining for the Court, therefore, is whether it should rule on Polarity's request for fees
4 outright or whether more information is needed before the Court can rule on the request.[3]

5    The Court declines to deny the request for fees outright because Polarity has asserted at least
6 a colorable claim for fees.  *Cf. Disabled Am. Veterans v. Gober*, 234 F.3d 682, 699 (Fed. Cir. 2000)
7 (noting that Federal Rule of Civil Procedure 12(b)(6) addresses the need to plead a colorable claim
8 upon which relief can be asserted).  Polarity has alleged that Diversified asserted patent infringement
9 in bad faith and that the counterclaim was objectively baseless (*e.g.*, because Diversified failed to
10 perform a reasonable pre-filing inquiry).  *See Brooks Furniture Mfg. v. Dutailier Int'l, Inc.*, 393 F.3d
11 1378, 1381 (Fed. Cir. 2005) ("Absent misconduct in conduct of the litigation or in securing the
12 patent, sanctions may be imposed against the patentee only if both (1) the litigation is brought in
13 subjective bad faith, and (2) the litigation is objectively baseless."); *see also Realtek*, 2005 U.S. Dist.
14 LEXIS 39332, at *11 (noting the same).

15    However, the Court also declines to grant the request for fees outright because Polarity has
16 not presented adequate evidence to demonstrate entitlement under the facts of this case.  Indeed, as
17 the Court noted at the hearing, the posture of this case is not particularly conducive to Polarity's
18 claim for fees.  It is noteworthy that Polarity did not respond to Diversified's demand letter of
19 November 23, 2005, opting instead to initiate this litigation by finding the declaratory relief claim in

---

[2] *But see True Ctr. Gate Leasing, Inc. v. Sonoran Gate, L.L.C.*, 402 F. Supp. 2d 1093, 1100-01 (D. Ariz. 2006) (concluding that court did not have jurisdiction over fee request pursuant to 35 U.S.C. § 285; also holding that, even if court did have jurisdiction, plaintiff was not a prevailing party within the meaning of § 285 because, even though covenant not to sue was a form of voluntary conduct that accomplished the major part of what plaintiff sought to achieve in lawsuit, it received no relief from court on merits of claims); *Sony Elecs., Inc. v. Soundview Techs., Inc.*, 375 F. Supp. 2d 99, 102 (D. Conn. 2005) (finding that it was not "appropriate [to] us[e] Section 285 as an independent source of jurisdiction for the otherwise moot inequitable conduct issue").

[3] The Court rejects Diversified's argument that the Court should not consider any request for fees because Polarity failed to file a motion for fees before the Court dismissed the underlying action for lack of subject matter jurisdiction.  Whether construed as a request to retain jurisdiction over a motion for fees or as a motion for fees itself, the Court finds no basis for the procedural bar Diversified seeks.  In any event, Polarity's opposition to Diversified's motion to dismiss may fairly be construed as a motion for fees.

January 2006, thereby precipitating Diversified's compulsory counterclaim for infringement. Although Polarity argues Diversified failed to conduct a good faith investigation prior to asserting the counterclaim, at the very least the posture of events leading to this litigation does not present the paradigm model for fees under § 285. Nonetheless, because colorable issues have been raised, the Court is not prepared at this juncture to find fees barred as a matter of law. The Court believes, however, that the crucial issue is relatively discrete.

The basis for Diversified's infringement claim is established by its letter of November 23, 2005 -- *i.e.*, Diversified's counterclaim of patent infringement was based on its analysis of Polarity's publicly available literature and its '598 patent. Polarity contends that this was not a reasonable pre-filing inquiry because Diversified never examined any actual Polarity product. However, Diversified could fairly infer that Polarity as the holder of the '598 patent practiced the technology in its patent, especially when the picture posted on Polarity's website suggested that the patent technology was in fact being employed in a Polarity product.

The critical question therefore is whether Diversified had a basis to believe that Polarity's '598 patent (and the products which presumably practice that patent) infringed Diversified's '610 patent. Polarity has already acknowledged that this issue can be addressed without any discovery. *See* Behiel Decl., Ex. N (letter, dated 6/23/06, from Polarity to J. Zimmerman) ("Diversified's patent infringement claim as set forth in its claim letter is based on the notion that Polarity's technology as disclosed in an issued Polarity patent infringes the patent-in-suit. That claim is incorrect on its face and can be easily addressed without discovery."). Furthermore, this Court is loathe to order discovery because the matter of attorney's fees is a collateral issue. *See Aventis Cropscience, N.V. v. Pioneer Hi-bred Int'l, Inc.*, 294 F. Supp. 2d 739, 744 (M.D.N.C. 2003) (concluding that, based on the language of § 285 and the Federal Circuit and Supreme Court's position on avoiding sizeable litigation over fees, "defendants do not have any entitlement to pursue discovery" and that "[a]ny attorneys' fee discovery should be limited in both scope and amount, keeping in mind that the need for the discovery must clearly outweigh the potential burden and expense to the courts and the parties").

Given these circumstances, the Court concludes that the most expeditious and cost effective way to proceed is as follows: Diversified shall file with the Court a document explaining the specific basis for its assertion (as reflected in its letter of November 23, 2005) that the '598 patent infringes at least claim 1 of the '610 patent. The explanation shall be at least as detailed as that which would be contained in a preliminary infringement chart. Diversified shall file this information with the Court within a week of the date of this order. Polarity shall then have one week to respond. Unless otherwise ordered, the Court shall not require further briefing or hearing.

## II.  CONCLUSION

For the foregoing reasons, Diversified's motion to dismiss is granted. However, the Court shall retain jurisdiction to decide the issue of attorney's fees. The parties shall provide supplemental information/briefing as ordered above.

This order disposes of Docket No. 35.

IT IS SO ORDERED.

Dated: October 17, 2006

_____
EDWARD M. CHEN
United States Magistrate Judge