United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

POLARITY, INC.,

        Plaintiff,

    v.

DIVERSIFIED TECHNOLOGIES, INC.,

        Defendant.
_____/

No. C-06-0646 EMC

**ORDER DENYING PLAINTIFF'S MOTION FOR ATTORNEY'S FEES**

---

On October 17, 2006, this Court granted Diversified's motion to dismiss based on the covenant not to sue it extended to Polarity. However, the Court retained jurisdiction to rule on Polarity's request for attorney's fees pursuant to 35 U.S.C. § 285. The Court instructed Diversified to file a document explaining the basis of the assertion in its demand letter that products practicing Polarity's '598 patent infringe at least claim 1 of Diversified's '610 patent.[1] Diversified did so, after which Polarity filed a response, arguing that Diversified's "claim chart" shows that Polarity had no reasonable basis for its claim of infringement.[2] Having reviewed the parties' briefs and accompanying submissions, the Court hereby **DENIES** Polarity's request for fees.

---

[1] *See MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1382 (Fed. Cir. 2005) (holding that district court did not clearly err in finding the case not to be exceptional based on evidence that patent holder's "attorneys performed a good faith, informed comparison of the claims of the '302 patent against the accused wafers").

[2] Technically, Polarity filed a counterclaim for infringement, in response to Diversified's declaratory judgment claims.

## I. DISCUSSION

In patent actions, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. In the case at bar, there is no contention that Polarity is not a prevailing party. Indeed, that Polarity is in fact a prevailing party is substantiated by this Court's dismissal of Diversified's infringement claim with prejudice. *See Motorola, Inc. v. Hazeltine Research, Inc.*, No. 88 C 4663, 1990 U.S. Dist. LEXIS 12769, at *3-4 (N.D. Ill. Sept. 24, 1990) (concluding that "the cases which have construed the term 'prevailing party' under 42 U.S.C. § 1988 are instructive as to the definition of that term under 35 U.S.C. § 285" -- *i.e.*, a "'prevailing party' is one who receives 'at least some relief on the merits of his claim,' and thus can be said to have 'obtained the substance of what he sought'"). Thus, the only question for the Court to resolve is whether the instant case constitutes an "exceptional" case for purposes of § 285 and if so whether fees are warranted.

The use of the word "exceptional" in § 285 is not to be taken lightly. "[T]he term . . . is generally defined as 'forming an exception,' 'being out of the ordinary,' 'uncommon' or 'rare.'" *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v Dana Corp.*, 372 F. Supp. 2d 833, 848 (E.D. Va. 2005). "Congress in choosing to limit district court authority to award attorney's fees to 'exceptional' cases has made clear that this should occur only in rare or extraordinary cases. And courts elucidating this statutory language have generally found that 'exceptional' cases are those rare or extraordinary cases blighted and marked by a party's bad faith or inequitable conduct." *Id.* at 851; *see also Aventis Cropscience, N.V. v. Pioneer Hi-Bred Int'l, Inc.*, 294 F. Supp. 2d 739, 743 (M.D.N.C. 2003) ("In imposing this limit [to exceptional cases], Congress expressed a desire to curtail attorney fees litigation to rare or unusual circumstances."). In other words, there must be some egregious action by a party such that fees must be awarded to the other party in order to prevent a gross injustice. *See FieldTurf Int'l, Inc. v. Sprinturf, Inc.*, 433 F.3d 1366, 1373 (Fed. Cir. 2006) ("We do not discern the egregious action required by precedent to support fee-shifting."); *Forest Labs., Inc. v. Abbott Labs.*, 339 F.3d 1324, 1329 (Fed. Cir. 2003) (stating that §285 is an exception to the American Rule concerning attorney fees and is "limited to circumstances in which it is necessary to prevent 'a gross injustice'"); *see also Continental Art Co. v Bertolozzi*, 232 F2d 131,

134 (7th Cir. 1956) (noting that attorney's fees should be not be awarded in an "ordinary and typical patent infringement suit").

"A case may be deemed exceptional when there has been some material inappropriate conduct related to the matter in litigation, such as willful infringement, fraud or inequitable conduct in procuring the patent, misconduct during litigation, vexatious or unjustified litigation, conduct that violates Fed. R. Civ. P. 11, or like infractions." *Brooks Furniture Mfg., Inc., v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005). "Absent misconduct in conduct of the litigation or in securing the patent, sanctions may be imposed against the patentee only if both (1) the litigation is brought in subjective bad faith, and (2) the litigation is objectively baseless." *Id.* A party seeking an award of fees under § 285 must establish the predicate conduct by clear and convincing evidence. *See Forest Labs., Inc. v. Abbott Labs.*, 339 F.3d 1324, 1327 (Fed. Cir. 2003) ("[A] district court must determine whether the prevailing party has proved by clear and convincing evidence that the case is 'exceptional.'"); *Kor-CT, LLC v. Savvier, Inc.*, No. 3:04cv789 (SRU), 2005 U.S. Dist. LEXIS 4728, at *4 (D. Conn. Mar. 28, 2005) (acknowledging that infringement claims were weak but stating that court could not conclude "that the claims were so entirely without merit that bringing them was clear and convincing evidence of bad faith").

Even if the case is determined to be exceptional, the decision whether or not to award attorney's fees is within a court's discretion. *See Brooks*, 393 F.3d at 1382. In determining whether to award attorney's fees under § 285, the Court considers such factors as "the closeness of the case, the tactics of counsel, the flagrant or good faith character of the parties' conduct, and any other factors contributing to imposition of punitive sanctions or to fair allocation of the burdens of litigation." *Perricone v. Medicis Pharm. Corp.*, 432 F.3d 1368, 1380-81 (Fed. Cir. 2005); *see also Serio-US Indus. v. Plastic Recovery Techs. Corp.*, 459 F.3d 1311, 1322 (Fed. Cir. 2006) (stating that "the denial of attorney fees is discretionary and 'permits the judge to weigh intangible as well as tangible factors," including any "factor[] whereby fee shifting may serve as an instrument of justice.").

Polarity does not claim that there has been material misconduct in the conduct of this litigation. Rather, it contends the litigation has been objectively baseless and brought in bad faith.

3

1  The Court finds that, in the instant case, Polarity has failed to meet its burden of proving by clear
2  and convincing evidence that Diversified's infringement claim was objectively baseless and brought
3  in subjective bad faith -- *i.e.*, that Polarity has failed to establish that this is an exceptional case.  The
4  Court emphasizes that, in so finding, it is not making any determination as to how claim 1 of the
5  '610 patent should actually be construed.  Fee litigation is not to be used as a means for a party to
6  litigate the substantive merits of the case.  *Cf. Aventis*, 294 F. Supp. 2d at 744-45 (M.D.N.C. 2003)
7  (noting that fee litigation should not be a second major litigation).  The Court further finds that in
8  any event, attorney's fees should not be awarded in this case.

9  A.    Diversified's "Admission"

10  As a preliminary matter, the Court rejects Polarity's argument that Diversified has effectively
11  admitted that it had no reasonable basis for its infringement claim.  Polarity contends that
12  Diversified has "expressly acknowledge[d]" that the '598 patent does not practice either the parallel
13  pairs or ratio of switches limitations of claim 1 of the '610 patent, Pl.'s Resp. at 3, because its claim
14  chart specifically states that it "is not -- and should not be construed as -- an accusation of
15  infringement by Diversified against Polarity or anyone else."  Def.'s Claim Chart at 2-3.  This
16  statement can hardly be construed as an admission.  The Court required Diversified to file a
17  document equivalent to a claim chart; Diversified's statement simply reflects that its covenant not to
18  sue Polarity is still intact in spite of this claim chart and ensures that the claim chart cannot be relied
19  upon by Polarity (or anyone else) to create a reasonable apprehension that it would face an
20  infringement suit.  *See Sierra Applied Sciences, Inc. v. Advanced Energy Indus., Inc.*, 363 F.3d 1361,
21  1373 (Fed. Cir. 2004) (noting that there is "a two-part test to guide the case-or-controversy analysis
22  in patent-based declaratory judgment suits," the first of which is that there must be "an explicit
23  threat or other action by the patentee, which creates a reasonable apprehension on the part of the
24  declaratory plaintiff that it will face an infringement suit").

25  B.    Diversified's Citation of the '598 Patent's Reference to the '610 Patent

26  The Court also rejects Polarity's contention that Diversified's "cit[ation] [of] the '598
27  patent's reference to the '610 patent as support . . . for certain elements of claim 1" demonstrates
28  that Diversified had no reasonable basis for its infringement claim.  Pl.'s Resp. at 4.  It is true that, in

its claim chart, Diversified relies in part on the '598 patent's reference to the '610 patent. *See* Def.'s Claim Chart at 4-6. Diversified does not rely *solely* on the '598 patent's reference to the '610 patent to meet any element of claim 1. *See id.* ("*Moreover*, the '598 patent incorporates Diversified's ['610] patent by reference . . . .") (emphasis added). The claim chart merely incorporates certain aspects of the '610 patent, such as the operation of power switches.

C.     <u>Failure to Satisfy the "Parallel Pairs" and "Ratio of Switches" Limitations</u>

Polarity argues that Diversified had no reasonable basis to believe the accused devices which practice the '598 patent infringe on two key limitations on Claim 1 of the '610 patent: (1) the "parallel pairs" and (2) the "ratio of switches" limitations. Having reviewed Diversified's claim chart and Polarity's responsive brief, the Court concludes that Diversified could have had a reasonable "basis to believe that Polarity's '598 patent (and products which presumably practice that patent) infringed on Diversified's '610 patent" (Docket No. 47, at 5) when it filed its counterclaim. Although Polarity appears to raise substantial and forceful arguments for non-infringement, there is sufficient ambiguity which would likely have required claims construction and factual development to resolve.

For instance, whether the "ratio of switches" limitation of the '610 patent requires that the infringing product must operate with some switches on while others were off (and not just with all switches on or all switches off) would appear to require construction at a *Markman* hearing. Arguably, even if a product operated with all switches off or all switches on, it may be contended there is literally a "ratio of switches" -- *i.e.* the "ratio" being zero or infinity.

As to the "parallel pairs" limitation, it may similarly be contended that the switches and voltage suppressors are connected in parallel pairs, at least in a literal sense. Again, it is likely that claims construction would have been required to determine whether this limitation implied a more specific functional limitation as Polarity argues.

Moreover, there appears to be factual matters that require development as well. For instance, on the question whether current flows through voltage suppressor 444 when there is an over-voltage condition across the switch, Diversified contends that "[b]ecause there is an inherent delay in the turn on time of switch 132 . . . , the current will be conducted through voltage suppressor 444."

5

1 Def.'s Claim Chart at 3-4.  Polarity responds that the inherent delay "may be accommodated by
2 appropriate selection of component values" Pl.'s Resp. at 6.  But the word "may" implicitly admits
3 there is a possibility that this limitation could be satisfied depending on the specifics of the
4 implementation of the design.  That the text of the '598 patent does not mention current flow
5 through 444 is not necessarily dispositive since the question is whether the accused product(s) which
6 practices and implements the '598 patent infringes.  More facts are needed.

Given the ambiguity of the issues and the substantial burden of proof imposed upon Polarity under § 285, the Court finds Polarity has not proven by clear and convincing evidence that Diversified's infringement claim was objectively baseless and that this action was brought in bad faith.  Other than its dispute over merits of Diversified's infringement contentions as measured by the '598 patent against the '610 patent, Diversified has presented no evidence of Polarity's subjective bad faith.

D.  <u>Discretion to Award Fees</u>

For the reasons stated above, this is not an exceptional case for purposes of § 285.  But even if this were an exceptional case under § 285, the Court would still in its discretion deny the motion for fees.  As noted above, factors that may be considered in determining whether to award attorney's fees under § 285 are "the closeness of the case, the tactics of counsel, the flagrant or good faith character of the parties' conduct, and any other factors contributing to imposition of punitive sanctions or to fair allocation of the burdens of litigation." *Perricone*, 432 F.3d at 1380-81; *see also Serio-US*, 459 F.3d at 1322 (stating that "the denial of attorney fees is discretionary and 'permits the judge to weigh intangible as well as tangible factors," including any "factor[] whereby fee shifting may serve as an instrument of justice.").

As noted above, this is a "close case" in the sense that the "parallel pairs" and "ratio of switches" limitations were terms likely in need of claim construction and possibly factual development as well.

As for the flagrant or good faith character of the parties' conduct, it is notable that Diversified did not rush to file a claim of infringement against Polarity but rather first issued a demand letter, *i.e.*, the letter of November 23, 2005.  Nor did Diversified rush to file a claim of

infringement when Polarity failed to respond to the demand letter for several months. *See* Docket No. 39, Ex. 2. Instead, Diversified sent another letter to Polarity on or about January 23, 2006. *See id.* Equally notably, Polarity did not make any attempt to engage in a meet and confer with Diversified in response to the two letters. Instead, Polarity chose to initiate this lawsuit for declaratory relief. *See id.* Only thereafter did Polarity send a letter in response to Diversified's letters. *See id.* Even after this, Polarity did not engage in any real meet and confer with Diversified on the merits. For example, in a letter dated March 13, 2006, Polarity stated that it would not provide any schematics or a sample product (on an attorney's eyes only basis) to Diversified *until* Diversified provided a prima facie infringement case. *See id.*, Ex. 3.

Finally, regarding other factors contributing to imposition of punitive sanctions or to fair allocation of the burdens of litigation, the Court is mindful, once again, that it was "[Polarity], not [Diversified], [who] initiated this action." *Samsung Elecs. Co. v. Rambus Inc.*, No. 3:05cv406, 2006 U.S. Dist. LEXIS 50007, at *137 (E.D. Va. July 18, 2006). By opting not to respond to Diversified's letters and instead initiating this litigation, Polarity actually precipitated Diversified's compulsory counterclaim for infringement. In addition, during the seven months following filing of the complaint, up to Diversified's covenant not to sue to, there was little litigation activity. Thus, "[Diversified] terminated its claims at a sufficiently early stage in the litigation that it would not be grossly unjust for [Polarity] to bear the burden of its own litigation costs." *Id.*

Accordingly, the Court concludes that, even if Polarity were correct and demonstrated that Diversified's infringement claim was objectively baseless, this is not a case where the Court should exercise its discretion to grant fees under § 285.

///
///
///
///
///
///
///
///

7

## II.  CONCLUSION

For the foregoing reasons, the Court concludes that this is not an exceptional case for purposes of § 285 warranting an award of attorney's fees.  Moreover, even if this were an exceptional case within the meaning of § 285, the Court in its discretion finds that fees are not warranted.  Accordingly, Polarity's request for fees is denied.

IT IS SO ORDERED.

Dated: November 29, 2006

_____
EDWARD M. CHEN
United States Magistrate Judge